UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | |
|---|---|
| **CASE NO.:** <u>CV 15-01872 SJO (VBKx)</u> | **DATE:** <u>August 4, 2015</u> |
| **TITLE:** <u>Ronald Saxe v. Cast & Crew Payroll, LLC et al.</u> | |

========================================================================
**PRESENT:** THE HONORABLE **S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**        **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                         Not Present

========================================================================
**PROCEEDINGS (in chambers):   ORDER DENYING PLAINTIFF'S MOTION TO REMAND TO LOS ANGELES SUPERIOR COURT** [Docket No. 21]

This matter is before the Court on Plaintiff Ronald Saxe's ("Plaintiff") Motion to Remand to Los Angeles Superior Court ("Motion" or "Motion to Remand"), filed May 7, 2015.  Defendants WAD Productions, Inc. ("WAD"), Cast & Crew Production Payroll, LLC ("Cast & Crew"), Telepictures Productions Inc. ("Telepictures"), and Edward Glavin ("Glavin") (collectively, "Defendants") filed an opposition to the Motion ("Opposition") on May 18, 2015, to which Plaintiff filed a Reply on May 22, 2015.  On June 22, 2015, the attorneys for the parties appeared for a Scheduling Conference wherein they and the Court discussed Plaintiff's pending Motion, as well as the viability of Plaintiff's claims.  On June 23, 2015, and with leave of the Court, Plaintiff filed a First Amended Complaint ("FAC"), which includes only two of the seven causes of action stated in his original complaint.  With regard to the issue of remand, Defendants filed a supplemental brief in opposition to Plaintiff's Motion to Remand ("Supplemental Brief" or "Brief") on July 8, 2015, to which Plaintiff filed a reply ("Reply Brief") on July 13, 2015.  For the following reasons, the Court **DENIES** Plaintiff's Motion to Remand.

I.      FACTUAL AND PROCEDURAL BACKGROUND

In the FAC, Plaintiff alleges the following.  Plaintiff is a 65-year-old man who was employed by Removing Defendants, as well as Defendant A Very Good Production ("AVGP"), for approximately 10 years before his termination.  (First Am. Compl.("FAC") ¶ 1, ECF No. 30; *see also* Notice of Removal ("Notice"),[1] ECF No. 1.)[2]  Collectively, Defendants, along with co-defendant AVGP, were

---

[1]   The Notice lists the correct names for Cast & Crew and Glavin.  (*See* Notice 2.)

[2]   AVGP did not join in the removal.  (*See generally* Notice.)  The Court addresses the parties' contentions regarding the implications of AVGP's failure to join in the removal, (*see*

CASE NO.:   CV 15-01872 SJO (VBKx)       DATE:   August 4, 2015

Plaintiff's co-employers. (FAC ¶ 2.) Defendants WAD and Cast & Crew were listed as Plaintiff's employers on his paychecks, while AVGP and Telepictures ("Employers") managed and controlled Plaintiff's work. (FAC ¶¶ 2-3.) Defendant Glavin was Plaintiff's supervisor and the producer of the show on which Plaintiff worked: The Ellen Degeneres Show (the "Show"). (FAC ¶¶ 1, 3.)

In 2003, Defendants hired Plaintiff as an assistant camera operator for the Show. (FAC ¶ 5.) Plaintiff's job responsibilities included charging camera batteries, preparing the camera for daily operation, running the camera cable, and assisting in other tasks as needed. (FAC ¶ 5.) Throughout the course of his employment, Plaintiff: (1) received raises, insurance, and benefits; and (2) was promised continued employment for each season of the Show. (FAC ¶ 5.) Plaintiff did not have any disciplinary write-ups and received verbal praise for his work from his supervisors and other cameramen. (FAC ¶ 5.)

In February 2009, Plaintiff suffered injuries at work and, as a result, became disabled. (FAC ¶ 6.) Plaintiff informed his Employers of his injuries and obtained workers' compensation benefits, but was never evaluated for accommodation and was required to work as if he did not have restrictions. (FAC ¶ 6.) Plaintiff alleges that after he became disabled, Defendants perceived him as too old, slow, and prone to injury, and needed a pretext to prevent him from returning to the Show for its eleventh season. (FAC ¶ 6.)

According to Plaintiff, the Show is known for its "liberal content, free wheeling style, and dancing audience members." (FAC ¶ 5.) In January 2013, during a break in taping, Plaintiff noticed an audience member in the front row dancing dangerously close to the edge of the aisle. (FAC ¶ 7.) Fearing that she would fall, Plaintiff warned her, "Be careful, you could hurt your pretty backside." (FAC ¶ 7.) The total interaction between Plaintiff and the audience member occurred in a matter of seconds. (FAC ¶ 7.) A crew member, "Chip," later asked Plaintiff about his interaction with the audience member, and Plaintiff jokingly told Chip about the comment. (FAC ¶ 7.)

After the taping, Plaintiff was summoned to Glavin's office. (FAC ¶ 8.) Glavin questioned Plaintiff about his interaction with the audience member, and commented that Chip had said that Plaintiff told the audience member, "Don't shake your ass, you'll get the camera guys excited." (FAC ¶ 8.) Plaintiff was shocked and told Glavin he had actually told her, "Be careful, you could hurt your pretty backside." (FAC ¶ 8.) He also told Glavin he did not make any statement he believed to be offensive about or to the audience member. (FAC ¶ 8.) Following this exchange, Glavin accused Plaintiff of being a liar and told him not to come back the next day. (FAC ¶ 8.) Plaintiff maintains that at no point in his employment had Defendants informed him that he could not speak with audience members. (FAC ¶ 8.)

---

Mot. 4-6, ECF No. 21; Opp'n 3-5, ECF No. 25; Reply 2, 4-5, 7, ECF No. 27), below.

CASE NO.: **CV 15-01872 SJO (VBKx)**          DATE: **August 4, 2015**

When Plaintiff told Glavin he was "making something out of nothing," Glavin reprimanded Plaintiff, saying, "For ten years we've had a lot of patience. We've trained you, kept you here for ten years. We've stuck by you. We've gotta move on, pay you for your work." (FAC ¶ 8.) When Plaintiff asked, "You're gonna fire me?," Glavin responded, "Time to find someone else to do that job." (FAC ¶ 8.) Plaintiff was in shock and proceeded to plead with Glavin, saying that he needed the work to support his family and, "Without [the job], I have nothing." (FAC ¶ 8.) Plaintiff was distressed and humiliated by this incident. (FAC ¶ 8.)

When Glavin called Plaintiff back into his office several hours later, he informed Plaintiff that his decision to terminate Plaintiff was on hold. (FAC ¶ 9.) Plaintiff continued to perform his work, but remained worried that Defendants would find a reason to fire him. (FAC ¶ 10.) On May 31, 2013, the Show's tenth season ended. (FAC ¶ 11.) Between May and August 2013, Plaintiff continued to receive medical treatment for his ongoing disability and sought the workers' compensation benefits to which he was entitled. (FAC ¶ 11.) On August 21, 2013, when his work was scheduled to resume, Plaintiff received a phone message from the Show informing him that he was not to return to work for the eleventh season. (FAC ¶ 12.) On information and belief, Plaintiff alleges that (1) he was replaced by a much younger worker and (2) his interaction with the audience member was a pretext for Defendants' real motives for terminating him: his age, disability, and perceived disability. (FAC ¶¶ 12, 14, 17.)

Plaintiff filed the instant lawsuit in the Superior Court of California for the County of Los Angeles ("Superior Court") on December 9, 2014. (*See generally* Notice, Ex.1 ("Compl."), ECF No. 1-1.)[3] Removing Defendants removed the action to this Court on March 13, 2015.[4] (*See generally* Notice.) On June 22, 2015, the parties' attorneys appeared before the Court for a Scheduling Conference at which they and the Court also discussed Plaintiff's instant Motion. (*See* Mins. of Scheduling Conference ("Conf. Mins."), ECF No. 28.) At the Scheduling Conference, the Court granted Plaintiff's oral motion to dismiss five of his seven original causes of action for: (1) breach of express and implied contract (against all Defendants except Glavin) (Compl. ¶¶ 26-32, ECF No. 1); (2) breach of the covenant of good faith and fair dealing (against all Defendants except

---

[3] In both the Complaint and FAC, Plaintiff asserts that he is a member of the IATSE-600 cinematographers union, and that he has exhausted any and all administrative prerequisites to suit. (Compl. ¶ 15; FAC ¶ 15.)

[4] Although there was a notable delay between Plaintiff's filing of the Complaint in the Superior Court and Defendants' removal to this Court, because Plaintiff did not serve the Complaint on Telepictures, Glavin, Cast & Crew, and WAD until either February 13, 2015, or February 18, 2015, (Decl. of Robyn M. First Coltin ("First Coltin Decl.") ¶¶ 3-6, ECF No. 1; Notice ¶ 4), removal was timely. *See* 28 U.S.C. § 1446(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 15-01872 SJO (VBKx)**  DATE: **August 4, 2015**

Glavin) (Compl. ¶¶ 33-41); (3) intentional infliction of emotional distress ("IIED") (against all Defendants) (Compl. ¶¶ 51-57); (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* (against all Defendants except Glavin) (Compl. ¶¶ 58-60); and (5) intentional misrepresentation (fraud), negligent misrepresentation, and concealment (against all Defendants). (Compl. ¶¶ 69-72.) Thus, the FAC, filed June 23, 2015, includes Plaintiff's two remaining claims for: (1) wrongful termination in violation of public policy (against all Defendants except Glavin) (FAC ¶¶ 42-50); and (2) discrimination in violation of California's Fair Employment and Housing Act (the "FEHA"), Cal. Gov. Code §§ 12900, *et seq.* (against all Defendants). (FAC ¶¶ 61-68; *see generally* Conf. Mins.)

As stated in the Notice, Defendants removed the lawsuit to this Court on the grounds that: (1) Plaintiff's claims are preempted by Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a); and (2) any non-preempted cause of action falls within the Court's pendent jurisdiction because each of Plaintiff's claims arise out of a common nucleus of operative fact. (*See* Notice ¶¶ 7-31.) More specifically, Defendants contend that the LMRA's Section 301(a) ("§ 301") preempts Plaintiff's remaining wrongful termination and FEHA claims because they require interpretation and application of the terms of the collective bargaining agreements ("CBAs") governing Plaintiff's employment. (Br. 3-9, ECF No. 32.) Alternatively, Defendants argue that even if Plaintiff's remaining claims are not preempted by § 301, the Court should exercise supplemental jurisdiction over these claims because: (1) this action was removable at the time of removal; (2) several of Plaintiff's claims in his original Complaint were preempted by § 301; and (3) Plaintiff's wrongful termination and FEHA claims arise from the same facts as his purportedly preempted claims. (Br. 9-12.)

In his pleadings, Plaintiff requests that the Court remand this lawsuit to the Superior Court on the grounds that: (1) AVGP did not join in the removal; and (2) Defendants have failed to demonstrate (a) how the CBAs apply to Plaintiff's claims and (b) that Plaintiff's claims are substantially dependent upon the construction of the CBAs. (*See generally* Mot; Reply; Reply Br., ECF No. 33.) Plaintiff also requests that the Court award him the attorney's fees and costs associated with bringing the Motion to Remand. (Mot. 8; Reply 10.)[5]

II. <u>DISCUSSION</u>

    A. <u>Legal Standard for Remand</u>

---

[5] Plaintiff's ten-page Reply fails to comply with this Court's five-page limit for reply briefs. (*See* Initial Standing Order ("ISO") ¶ 21, ECF No. 12.) However, in order to fully consider the parties' arguments for the purpose of adjudicating this Motion, the Court elects to consider Plaintiff's overlong pleading in its entirety.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-01872 SJO (VBKx)</u>          DATE: <u>August 4, 2015</u>

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Thus, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). Lack of subject matter jurisdiction may be raised by any party at any time, and it is never waived. *See United States v. Cotton*, 535 U.S. 625, 630 (2002); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1163-64 (9th Cir. 2002).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction," it must remand the case. *See* 28 U.S.C. § 1447(c). The Ninth Circuit has held that "a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). Courts must "strictly construe the removal statute against removal jurisdiction" and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (internal quotation marks omitted); *see, e.g.*, *Melchor v. Foster Poultry Farms, Inc.*, No. CV 12-00339 GSA, 2012 WL 1836289, at *7 (E.D. Cal. May 21, 2012) (stating that defendant's burden in a removal case based on § 301 preemption was high); *Saucedo v. Felbro, Inc.*, No. CV 07-06572 DDP, 2007 WL 4391506, at *1, 3 (C.D. Cal. Dec. 5, 2007) (same); *Romo v. Shimmick Constr. Co.*, No. CV 14-02403 JCS, 2014 WL 6450249, at *6-7 (N.D. Cal. Nov. 14, 2014) (same).

  B. <u>Plaintiff's Alleged Failure to Meet and Confer</u>

As an initial matter, Defendants argue that the Motion should be denied due to Plaintiff's failure to meet and confer prior to filing the Motion. (Opp'n 2-3.) Although parties are generally required to meet and confer prior to the filing of a motion pursuant to Local Rule 7-3 and the Court's ISO, in the interest of adjudicating the parties' arguments on the merits, the Court declines to deny the Motion on this basis.

  C. <u>AVGP's Failure to Join in the Removal</u>

In the Motion, Plaintiff contends that the fact that Defendant AVGP did not join in the removal, standing alone, warrants remand. (Mot. 5-6.) Defendants maintain that AVGP: (1) is a "sham defendant"; (2) is not a legal entity that can be sued; and (3) has not been served with the summons and complaint. (*See* Opp'n 4-5; Decl. of Kevin Yorn in Supp. of [Opp'n] ¶ 2, ECF No. 25-4; Decl. of Robyn M. Coltin in Supp. of Opp'n ("Second Coltin Decl.") ¶¶ 17-19, Exs. N-P,

CASE NO.: **CV 15-01872 SJO (VBKx)**       DATE: **August 4, 2015**

ECF No. 25-1; *see also* Notice ¶ 5; First Coltin Decl. ¶¶ 15-17.)[6]  Thus, Defendants state that AVGP was not required to join in the removal.  (Opp'n 4-5; Notice ¶ 5.)

Generally, 28 U.S.C. § 1446 "requires all proper defendants to join or consent to the removal notice."  *Prize Frize, Inc. v. Matrix (U.S.) Inc.,* 167 F.3d 1261, 1266 (9th Cir. 1999) (citations omitted), *overruled on other grounds by Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 681 (9th Cir. 2006).  As indicated, Defendants raise several challenges to the propriety of AVGP being named as a defendant in the Complaint.  (*See* Opp'n 4-5.)

More fundamentally, however, the Court declines to remand on this basis because Plaintiff's challenge to AVGP's failure to join the removal is untimely.  The failure to join all proper defendants in a removal petition is a procedural defect.  *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988); *Esposito v. Home Depot USA, Inc.,* 590 F.3d 72, 75-77 (1st Cir. 2009).  "A remand motion based on a defect in removal procedure must be filed within 30 days after the notice of removal is filed." *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.,* 69 F.3d 1034, 1037 (9th Cir. 1995) (citing 28 U.S.C. § 1447(c)) (footnote omitted).  Thus, "[a]fter the expiration of the thirty-day period following the filing of the removal notice, the right to object to non[-]jurisdictional defects in the removal process is considered waived." *Esposito,* 590 F.3d at 75 (citation and quotation marks omitted).  Here, Defendants' Notice of Removal was filed March 13, 2015.  (*See generally* Notice.)  Accordingly, Plaintiff's last day to timely file a motion to remand based on procedural defects was April 12, 2015.  The Motion to Remand was filed May 7, 2015. (*See generally* Mot.)  Because Plaintiff's challenge to any alleged procedural defect is untimely, the Court declines to remand the case to the Superior Court on this basis.  *See* 28 U.S.C. § 1447(c); *Council of Laborers,* 69 F.3d at 1037.

      D.      Section 301 Preemption

Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).  Courts in the Ninth Circuit employ a two-part inquiry to determine whether legal claims are preempted by § 301.  *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).  First, courts must examine whether "the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA."  *Id.*  "If the right exists solely as a result of the CBA, then the claim is preempted, and [the court's] analysis ends there."  *Id.*  (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985);

---

[6] The Court has reviewed and considered Plaintiff's Objections to Evidence ("Objections") filed concurrently with the Reply.  (ECF No. 27-1.)  Plaintiff's Objections are **overruled**.

CASE NO.: **CV 15-01872 SJO (VBKx)**                    DATE: **August 4, 2015**

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). Alternatively, if the right asserted in the cause of action "exists independently of the CBA, [the courts] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Burnside*, 491 F.3d at 1059 (citing *Caterpillar*, 482 U.S. at 394; *Lueck*, 471 U.S. at 212).

In order to determine whether a right is conferred upon an employee solely be virtue of the CBA, courts consider "the **legal** character of a claim, as independent of rights under the collective-bargaining agreement." *Burnside*, 491 F.3d at 1053 (emphasis in original) (citations and quotation marks omitted). Because the well-pleaded complaint rule "makes the plaintiff the master of the claim," *Caterpillar,* 482 U.S. at 392, "reliance on the CBA as an aspect of a defense is not enough to 'inject[] a federal question into an action that asserts what is plainly a state-law claim.'" *Burnside*, 491 F.3d at 1060 (citation omitted); *see also Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) ("If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.") (citation omitted). "The plaintiff's claim is the touchstone for this analysis [and] the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Cramer*, 255 F.3d at 691 (citation omitted).

In order for a plaintiff's claims to be preempted by § 301, "adjudication of the claim[s] must require interpretation of a provision of the CBA." *Cramer,* 255 F.3d at 691-92. Further, because "reference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms," *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 749 (9th Cir. 1993), "as long as the state-law claim can be resolved without interpreting the [collective bargaining] agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988). Thus, "[c]auses of action that only tangentially involve a provision of a collective-bargaining agreement," as well as "causes of action which assert nonnegotiable state-law rights independent of any right established by contract" are not preempted by § 301. *Ramirez*, 998 F.2d at 748 (citations, internal quotation marks, and original formatting omitted). This is because "Congress did not intend for section 301 to preempt 'state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.'" *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 863 (9th Cir. 1987) (citation omitted).

Here, Defendants maintain that Plaintiff's wrongful termination and FEHA claims each require interpretation of the CBAs and are therefore preempted by § 301. (Br. 3-9; *see also* Notice ¶ 15.) The Court examines this contention below.

       1.    <u>Wrongful Termination in Violation of Public Policy</u>

With regard to his first cause of action for wrongful termination, Plaintiff alleges that his Employers terminated him based on his age, permanent disability, and petitions for accommodation and

CASE NO.: CV 15-01872 SJO (VBKx)           DATE: August 4, 2015

workers' compensation benefits in violation of California law and public policy. (FAC ¶¶ 42-50.) In their Supplemental Brief, Defendants maintain that Plaintiff's first cause of action is preempted by § 301. (Br. 6-8.)

In general, state statutes, regulations, or public policy may limit an employer's right to terminate its employee regardless of whether a collective bargaining agreement exists between the employee and the employer. *See Paige*, 826 F.2d at 863. Under such circumstances, "the tort of wrongful discharge in violation of public policy exists independent of any contractual right." *Id.* Thus, a plaintiff's claim, including a wrongful termination claim, "is not preempted if it poses no significant threat to the collective bargaining process and furthers the state interest in protecting the public transcending the employment relationship." *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 644 (9th Cir. 1989) (quoting *Young*, 830 F.2d at 1001) (quotation marks omitted). By contrast, a wrongful termination claim is preempted under § 301 when it "is not based on any genuine state public policy . . . or . . . is bound up with interpretation of the collective bargaining agreement and furthers no state policy independent of the employment relationship." *Jackson*, 881 F.2d at 643-44 (quoting *Young*, 830 F.2d at 1002) (quotation marks omitted).

Defendants contend that the Court must "interpret the [CBAs] to determine whether Plaintiff was terminated or simply not rehired following expiration of his term of employment." (Br. 4.) To support this argument, Defendants have proffered evidence beyond the facts alleged in the FAC[7] showing the following. Plaintiff was employed by WAD[8] as a Camera Utility ("Utility"). (Notice

---

[7] "[E]mployees frequently attempt to avoid federal law by basing their complaint on state law [and] disclaiming any reliance on the provisions of the collective bargaining agreement." *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984), *overruled on other grounds by Lueck*, 471 U.S. 202; *see also Cramer,* 209 F.3d at 1128 (stating that the courts "may look beyond facts pleaded in complaint to ascertain facts that would appear in a 'well pleaded' complaint") (citation omitted). "To determine whether [§] 301 preempts a state . . . claim, [the courts] do not look to how the complaint is cast." *Hyles v. Mensing,* 849 F.2d 1213, 1216 (9th Cir. 1988). "Rather, [the courts] inquire whether 'the claim can be resolved only by referring to the terms of the CBA.'" *Id.* (quoting *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir. 1987)).

[8] Although WAD is the Defendant that is a party to the CBAs (Notice ¶ 14), "[§] 301(a) does not contain any requirement that the parties to an action brought thereunder must also be the parties to the allegedly breached contract." *Painting & Decorating Contractors Ass'n of Sacramento v. Painters & Decorators Joint Comm. of the E. Bay Cntys., Inc.,* 707 F.2d 1067, 1071 (9th Cir. 1983). Instead, "[a]ll that is required for jurisdiction to be proper under § 301(a) is that the suit be based on an alleged breach of contract between an

CASE NO.:   CV 15-01872 SJO (VBKx)                    DATE:   August 4, 2015

¶ 10; Decl. of Derek Westervelt in Supp. of Opp'n ("Westervelt Decl.") ¶ 4, ECF No. 25-5.) Additionally, Plaintiff was represented by Local 600 of the International Alliance of Theatrical Stage Employees and Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada ("IATSE"), a labor organization under the LMRA (the "Union"). (Westervelt Decl. ¶ 5, Ex. A; *see also* FAC ¶ 15; Notice ¶ 11.) At all relevant times, the applicable bargaining agreements between WAD and the Union were the: (1) WAD Productions – 'The Ellen Degeneres Show' Memorandum of Agreement, effective for each season of the Show ("MOA"); (2) Producer – IATSE and MPTAAC Basic Agreement of 2012, effective between August 1, 2012, and July 31, 2015 ("Basic Agreement"); (3) Producer – IATSE and MPTAAC Videotape Electronics Supplemental Basic Agreement of 2012, effective between October 1, 2012, and September 30, 2015 ("Videotape Agreement"); and (4) Supplemental Digital Production Agreement of October 1, 2012 Between Producer and International Alliance of Theatrical Stage Employees, effective between October 1, 2012, and September 30, 2015 ("Digital Agreement") (collectively, the "Agreements"). (Notice ¶ 12; Westervelt Decl. ¶¶ 5-6, Exs. A (MOA), B (Basic Agreement), C (Videotape Agreement), D (Digital Agreement).) The MOA incorporates the Basic Agreement, Videotape Agreement, and Digital Agreement by reference and makes each of the WAD Agreements applicable to covered employees. (MOA ¶ 2, Ex. A.)

In their pleadings, Defendants argue that adjudicating Plaintiff's wrongful termination claim requires interpretation of the CBAs for the following reasons. First, to make out a claim for wrongful termination, Plaintiff must show that he was terminated. (Br. 3.) Second, under California law, "the non-renewal of an employment contract or refusal to re-hire an individual after the employee's term of employment has expired is not a 'termination' and cannot support a tort claim for wrongful termination." (Br. 3.) Third, under Articles 15 and 22 of the Videotape Agreement, Plaintiff's guaranteed employment as a Utility was only daily or weekly, and therefore "it was entirely within the Show's discretion to decide whether or not it wanted to rehire Plaintiff to work on the Show for another day or week or hire someone else in his place." (Br. 4; *see* Videotape Agreement 21-27, 30-31.)[9]

Article 22(d) of the Videotape Agreement states that "the guaranteed length of employment shall be daily or weekly. A guarantee for a longer term shall be specifically set forth in writing. An employee may be replaced following the completion of the guaranteed period of employment."

---

employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract." *Id.* (citing *Castanada v. Dura-Vent Corp.*, 648 F.2d 612, 616 (9th Cir. 1981)).

[9] Each citation to the Agreements refers to the page number in the agreement itself rather than the pagination provided by Defendants for all Agreements.

CASE NO.: **CV 15-01872 SJO (VBKx)**      DATE: **August 4, 2015**

(Videotape Agreement 31.) Based on these provisions, Defendants argue that Plaintiff's wrongful termination claim is preempted because the Court must interpret the CBAs to determine whether Plaintiff was terminated or "simply not rehired following the expiration of his term of employment." (Br. 4.) The Court agrees.

In their pleadings, (*see* Opp'n 13; Br. 3-4), Defendants cite several federal and state court cases holding that "[i]n California, an employee whose fixed-term contract is not renewed cannot state a claim for wrongful termination in violation of public policy."[10] *Wells v. Bd. of Trustees of Cal. State Univ.*, 393 F. Supp. 2d 990, 997 (N.D. Cal. 2005) (citing *Motevalli v. L.A. Unified Sch. Dist.*, 122 Cal. App. 4th 97, 112-13 (2004); *see also Touchstone Television Prods. v. Super. Ct.*, 208 Cal. App. 4th 676, 680 (2012) ("Decisional law does not allow a plaintiff to sue for wrongful termination in violation of public policy based upon an employer's refusal to renew an employment contract.") (citing *Daly v. Exxon Corp.*, 55 Cal. App. 4th 39, 63 (1997)). This is because "under a fixed-term contract, the employment is terminated by [the] expiration of its appointed term." *Touchstone*, 208 Cal. App. 4th at 681 (citing Cal. Lab. Code § 2920(a); *Daly*, 55 Cal. App. 4th at 63; *Motevalli*, 122 Cal. App. 4th at 102; *Wells,* 393 F. Supp. 2d at 997) (quotation marks and original formatting omitted). Thus, under California law, "a decision not to renew a contract set to expire is not actionable in tort." *Touchstone*, 208 Cal. App. 4th at 682 (citations omitted).

In each of the cases cited above, the plaintiff had an employment contract for a fixed term. *See Touchstone*, 208 Cal. App. 4th at 678, 682 (employment contract with option to renew on annual basis); *Motevalli*, 122 Cal. App. 4th at 102-03, 112-13 (employment contract for 2000-2001 school year); *Wells*, 393 F. Supp. 2d at 997 (one-year employment contract); *Daly*, 55 Cal. App. 4th at 41, 45 (one-year employment contract). Based on these fixed terms, the courts found that if the employer elected not to renew the employee's contract, the employer "did not terminate [the employee's] employment. Instead [the employee's] employment expired at the end of [the contract term] because [the employer] decided not to exercise its contractual option to hire [the employee] for another [term]." *Touchstone*, 208 Cal. App. 4th at 683. In other words, the employer's conduct "[did] not involve a decision to terminate an employee but, instead, a decision not to rehire an employee whose contract would expire on its own terms." *Id.*; *see also Motevalli*, 122 Cal. App. 4th at 113 ("[T]he plaintiff's use of the term 'wrongful termination' was a misnomer in that there was no termination, only a nonrenewal of the employment contract.") (citation omitted).

Here, Defendants argue that the Court must interpret Article 22(d) of the Videotape Agreement in order to determine whether Plaintiff's Employers terminated him or merely elected not to renew

---

[10] Plaintiff's Reply Brief neither acknowledges nor attempts to distinguish his case from these authorities. (*See generally* Reply Br.)

CASE NO.: **CV 15-01872 SJO (VBKx)**           DATE: **August 4, 2015**

his fixed-term employment contract. (Br. 4.) The Court agrees. Although Defendants do not cite, and the Court has not found, case law interpreting the application of this principle in the context of § 301 preemption, the above-cited authorities make clear that a claim for wrongful termination in violation of public policy will not lie where (1) the employee's employment contract is for a fixed term and (2) the employer elects not to renew the employee's contract once that fixed term expires. *See Wells,* 393 F. Supp. 2d at 997; *Touchstone*, 208 Cal. App. 4th at 680. Here, the Videotape Agreement provides both that (1) "the guaranteed length of employment shall be daily or weekly" and (2) "[a]n employee may be replaced following the completion of the guaranteed period of employment." (Videotape Agreement 31.) The Basic Agreement includes the same language. (Basic Agreement 94.) Thus, the Agreements appear to terminate a covered employee's employment at the end of a day- or week-long term unless the employer renews the employee's contract.

As indicated above, because "[P]laintiff's claim is the touchstone for th[e premption] analysis, the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Cramer*, 255 F.3d at 691 (citation omitted). Here, at minimum, the Court must interpret the Agreements' provisions imposing a fixed day- or week-long term of employment, to determine whether Plaintiff may state a claim for wrongful termination in violation of public policy under California law. *See id.* Accordingly, Plaintiff's wrongful termination claim properly remains in federal court.

    2.    <u>FEHA Claim</u>

Plaintiff's second cause of action is for violation of the FEHA. (FAC ¶¶ 61-68.) Defendants argue that Plaintiff's FEHA claim is preempted because adjudicating this claim would require the Court to the CBAs in order to determine whether Defendants had a legitimate, non-discriminatory reason for their allegedly wrongful employment action under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. (Br. 9.) However, as indicated above, the Ninth Circuit has made clearly that "reliance on the CBA as an aspect of a defense is not enough to 'inject[] a federal question into an action that asserts what is plainly a state-law claim.'" *Burnside*, 491 F.3d at 1060 (citation omitted); *see also Cramer*, 255 F.3d at 691 ("If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.") (citation omitted). Because "[P]laintiff's claim is the touchstone for th[e preemption] analysis, the need to interpret the CBA must inhere in the nature of [his FEHA] claim." *See Cramer*, 255 F.3d at 691 (citation omitted). Further, the Ninth Circuit has "consistently held that state law discrimination claims under the FEHA do not require courts to interpret the terms of a CBA and are therefore not preempted by § 301." *Schrader v. Noll Mfg. Co.*, 91 Fed. App'x 553, 555 (9th Cir. 2004) (citing *Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1517 (9th Cir. 1988); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286-87 (9th Cir. 1989); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 240 (9th Cir. 1990); *see also Ramirez*, 998 F.2d at 749). Since Defendants' may not commandeer Plaintiff's FEHA claim in asserting their defense thereto, and

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 15-01872 SJO (VBKx)     **DATE:** August 4, 2015

the Ninth Circuit has repeatedly held that FEHA claims are not preempted by § 301, Defendants' preemption argument fails.

Alternatively, Defendants argue that the Court has supplemental jurisdiction over the FEHA claim pursuant to 28 U.S.C. § 1367 ("§ 1367"). (Opp'n 19-20.) Congress enacted § 1367 "to provide a statutory basis for pendent, ancillary, and pendent-party jurisdiction." *Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 24 F.3d 1545, 1555 (9th Cir. 1994), *overruled on other grounds by Cal. Dept. of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008). Section 1367(a) provides that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Thus, "[i]f the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005). Overall, "[o]nce the court determines it has original jurisdiction over the civil action, it can turn to the question whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over the other claims in the action." *Id.*

In interpreting § 1367, the Supreme Court has recognized the new limits the statute imposes on judicial discretion when determining whether to exercise supplemental jurisdiction. *See id.* ("Section 1367(a) commences with the direction that §§ 1367(b) and (c), or other relevant statutes, may provide specific exceptions, but otherwise § 1367(a) is a broad jurisdictional grant."). Similarly, the Ninth Circuit has held:

> By use of the word 'shall,' the statute makes clear that if power is conferred under section 1367(a), and its exercise is not prohibited by [§] 1367(b), a court can decline to assert supplemental jurisdiction over a pendent claim only if one of the four categories specifically enumerated in [§] 1367(c) applies . . . . Accordingly, unless a court properly invokes a [§] 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 15-01872 SJO (VBKx)**         DATE: **August 4, 2015**

*Exec. Software*, 24 F.3d at 1555-56 (collecting cases). Like the Supreme Court, the Ninth Circuit has rejected non-statutory bases for declining to exercise supplemental jurisdiction. *Id.* at 1556-57.

        a.        <u>Plaintiff's FEHA Claim Falls Within the Court's Supplemental Jurisdiction</u>

Claims preempted under § 301 are within a district court's original jurisdiction. *See Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 561-62 (1968) ("Title 28 U.S.C. [§] 1337 says that '[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce' . . . . [and i]t is that original jurisdiction that a [§] 301 action invokes.") (citation omitted); *Scott v. Machinists Auto. Trades Dist. Lodge No. 190 of N. Cal.*, 827 F.2d 589, 591 (9th Cir. 1987) (affirming district court's determination that it had original jurisdiction over the plaintiff's claims preempted by § 301). Accordingly, because § 301 preempts Plaintiff's wrongful termination claim, this Court has original jurisdiction over that claim.

As indicated, in order for this Court to have supplemental jurisdiction over Plaintiff's non-preempted FEHA claim, the FEHA claim must form part of the same case or controversy as the claim preempted under § 301. *See Exxon Mobil*, 545 U.S. at 552; 28 U.S.C. § 1367(a). In the § 301 context, a preempted claim need only be asserted within the same complaint as a non-preempted claim to satisfy this requirement. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 n.3 (2003) ("[A] state claim can . . . be removed through the use of the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), provided that another claim in the complaint is removable."); *Hernandez v. Pac. Mar. Ass'n*, 379 Fed. App'x 668, 671 (9th Cir. 2010) ("Because the plaintiff's state law claims . . . [were] preempted by [§] 301 of the LMRA, the district court had federal question jurisdiction over at least some of the plaintiff's claims [and s]ubject matter jurisdiction over the balance of the claims in the amended complaint was proper under 28 U.S.C. § 1367(a).").

Here, Plaintiff asserts his non-preempted claim as part of the same complaint as his preempted claim. (*See generally* FAC.) Further, both claims arise from the same conduct on the part of his Employers. (*See generally* FAC.) Thus, Plaintiff's non-preempted claim under FEHA clearly falls within the Court's supplemental jurisdiction, and the Court may not decline to exercise supplemental jurisdiction over this claim unless it has a statutory basis for doing so. *See Exec. Software*, 24 F.3d at 1556-57 (collecting cases).

///

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

CASE NO.: **CV 15-01872 SJO (VBKx)**        DATE: **August 4, 2015**

      b.    <u>The Exceptions Outlined in § 1367 Do Not Apply to the Exercise of Supplemental Jurisdiction Over Plaintiff's Non-Preempted Claim</u>

Finally, the Court's supplemental jurisdiction inquiry shifts to exceptions under §1367(c). As previously stated, "unless a court properly invokes a section 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted." *Exec. Software*, 24 F.3d at 1556 (collecting cases). Section § 1367(c) permits courts to decline to exercise supplemental jurisdiction over a claim if:

    (1) [T]he claim raises a novel or complex issue of State law,
    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
    (3) the district court has dismissed all claims over which it has original jurisdiction, or
    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Plaintiff does not address any of these exceptions or argue that they apply in the instant matter. (*See generally* Mot.; Reply; Reply Br.)

Here, there is no indication that Plaintiff's non-preempted FEHA claim presents novel or complex issues of California law. Thus, §1367(c)(1) does not apply to the Court's exercise of supplemental jurisdiction over Plaintiff's non-preempted claims. The Court also finds that § 1367(c)(2), which applies where a claim over which the district court lacks jurisdiction "substantially predominates"[11] those claims over which the court has original jurisdiction, is inapplicable to the facts of this case. This is because: (1) of Plaintiff's two remaining claims, one is preempted; and (2) the claim that is not preempted arises out of the same core facts on which the preempted claim is based. (*See generally* FAC.) Additionally, Section 1367(c)(3) does not apply because the Court has not dismissed any of the claims over which it has original jurisdiction; Plaintiff voluntarily dismissed five of his seven claims at the Scheduling Conference. (*See generally* Conf. Mins.) Finally, with regard to § 1367(c)(4), the Court finds no compelling reasons to decline jurisdiction, and Plaintiff does not present any in his pleadings. (*See generally* Mot.; Reply; Reply Br.) Accordingly, the Court **DENIES** Plaintiff's Motion to Remand as to both causes of action alleged in the FAC.

---

[11] Although Plaintiff's FEHA claim may have "substantially predominated" if his wrongful termination were based exclusively on violation of FEHA, according to his FAC, Plaintiff's wrongful termination claim is based on numerous California "policies" stated in: "FEHA . . . , the Labor Code, the Business & Professions Code, [the] Americans with Disabilities Act . . . , the [Age Discrimination in Employment Act], [t]he Health & Safety Code, and common laws." (FAC ¶ 44.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| **CASE NO.:** CV 15-01872 SJO (VBKx) | | **DATE:** August 4, 2015 | |

### III. RULING

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand the instant lawsuit to the Superior Court.  Because Plaintiff's Motion is **DENIED**, the Court also **DENIES** Plaintiff's request for attorney's fees and costs associated with bringing the Motion.